# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER L. BAKER, | ) |
| Petitioner, | ) |
| vs. | ) Case No. 13-0598-CV-W-ODS-P |
| DEAN MINOR, | ) |
| Respondent. | ) |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Christopher L. Baker, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on June 10, 2013, seeking to challenge his 2009 conviction and sentence for Driving While Intoxicated, Chronic Offender, which was entered in the Circuit Court of Benton County, Missouri.

The petition appears to contain only one ground for relief, but, in fact, there appear to be two: (1a) that trial counsel was ineffective for failing to timely disclose a defense witness, and for failing to make an adequate offer of proof as to the witness's testimony; and (1b) that trial counsel was ineffective for failing to file a motion to suppress the statements made by the petitioner before he was advised of his *Miranda*[1] rights. Respondent contends that ground 1a is without merit, and ground 1b is procedurally defaulted.

## SUMMARY OF THE FACTS

On appeal from the denial of his Rule 29.15 motion, the Missouri Court of Appeals summarized the facts as follows:

---

1 *Miranda v. Arizona*, 384 U.S. 436 (1966).

On October 22, 2007, Missouri Conservation Agent David Harms was driving on Highway C in Benton County when a pickup truck approached him from behind at a high rate of speed. Although that particular stretch of highway was hilly and divided by a double yellow line, the truck passed Agent Harms at the crest of a hill. As the truck passed, Agent Harms observed a white male, wearing a ball cap and a dark blue jacket, in the driver's seat. There were no other occupants in the truck.

When the truck passed, Agent Harms was driving at or near the 55-miles-per-hour speed limit. After the truck sped by, Agent Harms accelerated to 70 miles per hour to catch up and note the truck's plate number. While following the truck, Agent Harms called in to the Benton County Dispatch Center and requested assistance from the highway patrol. Missouri Highway Patrol Trooper Zackery Bryan was at the dispatch center when the call came in at approximately 2:18 p.m. Agent Harms continued to follow the truck as it turned south onto Highway 65. The dispatcher informed Agent Harms that a state trooper was en route.

The truck turned into the parking lot of TD Outdoor Power, a compact tractor and small engine business. Agent Harms drove to the next driveway and quickly turned around, resulting in him losing sight of the truck "very brief[ly]." Agent Harms drove into the entryway of the business's parking lot and parked. He saw Baker standing outside of his truck with the driver's door open. Baker was holding a guitar case and a two-liter bottle of Coke. Agent Harms watched as Baker walked over to a mobile home near the business. Baker stopped near the door to the mobile home for a short while, and then walked toward TD Outdoor Power and went inside.

When Baker was inside, he asked the owner, Dale Crabtree, if he could "hang out" there for a while. When Crabtree asked why, Baker responded that he thought that he was being followed. Crabtree offered to call the police, but Baker stopped him, saying that he thought that the person following him was with law enforcement. Crabtree did not want to get involved and repeatedly asked Baker to go back to his truck. In response to one of these requests, Baker replied, "I guess all they could get me for [is] DWI." Baker appeared to be scared.

Trooper Bryan completed some paperwork at the dispatch center before responding to the call. He pulled into the business's parking lot and observed Baker's Ford pickup sitting alone in the lot. Trooper Bryan spoke briefly with Agent Harms, who described Baker to the trooper and explained what had happened. Trooper Bryan went inside to find Baker.

When he saw Trooper Bryan pull into the parking lot, Baker told Crabtree and the other employees at the business that he needed to use the bathroom. He went inside the men's restroom but left the door open. Crabtree heard his stepson, an employee, tell Baker angrily, "No, that's not going to happen." Crabtree turned and saw Baker pull a small bottle out of the trash can and put it into his jacket pocket. Trooper Bryan came in shortly thereafter. When Trooper Bryan entered the business at approximately 2:40 p.m., he found the employees shouting at Baker to leave. Trooper Bryan asked Baker to exit the building. Initially, Baker was very slow to respond, but he eventually went outside with the trooper.

As they walked toward the patrol car, Trooper Bryan noticed that Baker smelled strongly of intoxicants. He also observed that Baker's eyes were bloodshot and watery and that Baker staggered and swayed as he walked. When Baker spoke, his speech was slurred, and he mumbled. Trooper Bryan asked whether Baker had had anything to drink. Baker responded, "[j]ust this," and he pulled a three-quarter full, 200 milliliter bottle of whiskey from his pocket.

Baker was still carrying his guitar case. Trooper Bryan asked Baker to set the case down and to sit in the front passenger seat of the patrol car. Baker stared at the trooper as if he was unsure what to do. After the trooper asked him a second time, Baker put the guitar case on the ground, staggered over to the patrol car, and sat down.

Inside the patrol car, Trooper Bryan asked Baker whether he had been driving. Baker said that he had not. He said that his girlfriend had been driving but that she ran away because she thought someone was following them and she was scared. Trooper Bryan contacted Agent Harms, who was still waiting at the entrance to the parking lot. Agent Harms confirmed that Baker was the sole occupant of the pickup that passed him and that Agent Harms had seen no one else around the vehicle in the parking lot.

Trooper Bryan asked Baker for his driver's license and proof of

insurance. Baker produced a Missouri non-driver's license and told the trooper that his proof of insurance was above the visor in his pickup truck. Baker gave the trooper permission to get into the truck and retrieve the insurance card. Baker also asked the trooper to take his guitar case and put it in the cab of the truck.

Trooper Bryan walked over to the pickup truck and opened the door. He looked down and saw a twelve-pack of beer sitting on the driver's side floorboard. There were three unopened cans remaining that were cold to the touch. Trooper Bryan noticed empty beer cans in the bed of the pickup truck. He put the guitar case in the passenger seat, seized the beer, and returned to his patrol car. When Trooper Bryan asked Baker about the beer, Baker said he had been drinking only whiskey. Baker told the trooper that he had seizures and that he was taking several types of medications: Propanolol, Naproxen, Gabapentin, Lithium, and Seroquel. Trooper Bryan asked Baker whether he was supposed to be drinking while on the medication, but Baker did not respond.

Trooper Bryan conducted the horizontal gaze nystagmus [f.n. 1] ("HGN") field sobriety test. Baker exhibited five of six clues tending to indicate intoxication; the sixth clue was inconclusive because Baker failed to cooperate.

> [f.n. 1] Nystagmus means involuntary eye movement.

Next, Trooper Bryan asked Baker to recite the alphabet from K to Y without singing. Baker sang the entire alphabet quietly to himself, but sang more loudly from K to Y. After he was finished, Baker recited the alphabet from Q to Z "for no apparent reason." Baker's speech was slurred, and he mumbled "to the point of being incoherent." Finally, Trooper Bryan asked Baker to count backward from 98 to 86. Baker counted from 90 to 80, then from 89 to 86, and then back up to 88.

Based on all of his observations, Trooper Bryan believed that Baker was intoxicated. At 2:58 p.m., Trooper Bryan arrested Baker for driving while intoxicated. He read Baker the *Miranda* [f.n. 2] warnings and took him to jail. During the booking process, Trooper Bryan advised Baker of the Missouri Implied Consent Law [f.n. 3] and requested that Baker submit to a chemical breath test. Baker refused to take the test.

> [f.n. 2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[f.n. 3] §§ 577.020 – 577.041. All statutory citations are to Revised Statutes of Missouri 2000, as updated through the 2006 Cumulative Supplement, unless otherwise noted.

Trooper Bryan again gave Baker the *Miranda* warnings before interviewing him. Baker admitted that he had been drinking, but he said that he had consumed only whiskey. Baker said that he had started drinking "half an hour" before the interview. The interview began at 3:30 p.m., so, according to Baker, he had begun drinking at 3:00 p.m. The trooper pointed out that by 3:00 p.m., Baker was already seated in Trooper Bryan's patrol car. Trooper Bryan then asked Baker whether he was under the influence of alcohol, and Baker said, "yes." After answering this question, Baker became angry and uncooperative, and was yelling, swearing, crying and threatening Trooper Bryan. The trooper ended the interview.

Six days before trial, the defense disclosed the identity of a potential witness, Linda Lesmeister. At a pre-trial conference, the State moved to exclude Lesmeister's testimony on the ground that the defense had not disclosed her in a timely fashion. The State noted that it had requested the identities of potential witnesses on December 12, 2007, ten months before trial, yet the defense disclosed Lesmeister only six days before trial, despite being aware of her existence from the beginning. The defense responded by advising the court, "we disclosed Linda as soon as we knew she was going to be available as a witness, as to what she would testify to." The defense further claimed, "we disclosed as soon as possible, and we would certainly make her available for [the State] to discuss and interview, and whatever she needs to do today." The circuit court sustained the State's motion to exclude Lesmeister as a witness because of the late disclosure.

During closing argument, Baker's counsel argued that Baker's behavior was based upon mental problems and not intoxication. In rebuttal, the State argued:

> The evidence that came in today is what you're supposed to be considering. The arguments are not evidence.
>
> What did you hear from the stand?
>
> What was admitted into evidence?
>
> What did you hear, in evidence, about a mental

problem? They're certainly keying on it. Was there any evidence of it? He made statements to the officer, and some medications. That's all we have, just statements. And he said he suffered seizures. That's all there is. That entire argument was about some kind of mental problem that there's no evidence of.

After deliberating for thirty minutes, the jury found Baker guilty of driving while intoxicated. The court later sentenced Baker as a chronic offender to ten years imprisonment.

On direct appeal, Baker challenged the trial court's exclusion of Lesmeister as a witness. In a per curiam order with an accompanying memorandum, we affirmed the trial court's decision, finding that Baker failed to demonstrate plain error insofar as he failed to present an offer of proof as to the contents of Lesmeister's testimony at trial [f.n. 4].

> [f.n. 4] *State v. Baker*, 304 S.W.3d 250 (Mo. App. W.D. 2009) (mem.).

Thereafter, Baker filed a pro se Rule 29.15 motion for post-conviction relief. Appointed counsel filed an amended motion, arguing, among other claims, that counsel was ineffective for failing to timely disclose Lesmeister as a witness. The amended motion alleged that Lesmeister would have testified that Baker suffered from seizures, was on several medications, and had suffered a seizure earlier the day of his arrest.

The motion court held an evidentiary hearing wherein it received testimony from Baker, Lesmeister, and trial counsel. Baker testified that he advised counsel of Lesmeister as a witness and indicated that she would be able to testify that Baker had suffered a seizure the day he was arrested and that he had not been drinking before 1:30 p.m. Baker testified that he advised trial counsel about Lesmeister as a potential witness "a couple of weeks before the trial, I guess."

Lesmeister testified that she had known Baker since he was two years old. She also testified that she was with him for part of the day when he was arrested; she indicated that he had suffered a seizure around 11:00 or 11:30 that morning. Lesmeister further testified that, because of the seizure, Baker was "wobbly" and "slurring his words." Lesmeister testified that Baker took a nap for about an hour and seemed better after that. Baker left around 1:30

p.m., and Lesmeister did not see him the rest of the day, but she knew that he had not been drinking in the time she was with him. She also indicated that the only medication she witnessed him take that day was Excedrin.

Trial counsel indicated that he did not interact with Lesmeister until after Baker indicated that he was not interested in accepting a plea offer. Trial counsel testified that, before trial, he spoke with Lesmeister once on the phone. As soon as counsel discovered that her testimony could be beneficial to Baker, counsel contacted the State and indicated his intent to call Lesmeister as a witness.

The motion court rejected Baker's claim of ineffective assistance, finding that the untimely disclosure of Lesmeister as a witness was directly attributable to Baker's failure to advise counsel of her potential testimony earlier in the process. The motion court specifically found that Lesmeister was "known exclusively to Movant as a potential witness, and it was nearly a year before the Movant provided that information to his trial counsel. By the time he did so, the ensuing disclosure to the State was untimely." (Emphasis in original.) The motion court also concluded that Baker suffered no prejudice from the untimely disclosure because Lesmeister's testimony "added nothing to the facts . . . ." The motion court determined that Lesmeister's testimony was "cumulative at best and detrimental to Movant at worst[,]" and that regardless how the testimony was viewed, Baker simply failed to demonstrate prejudice from its absence. Baker appeals.

(Doc. No. 9, Ex. 12, pp. 2-8).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[2] Because the state court's findings of fact have fair support in the record and because

---

2 "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court

petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## **GROUND 1a – INEFFECTIVE ASSISTANCE OF COUNSEL**

In ground 1a, petitioner contends that trial counsel was ineffective for failing to timely disclose a defense witness, and for failing to make an adequate offer of proof of the defense witness testimony. In order to succeed on a claim of ineffective assistance of counsel, petitioner must establish that: (1) his counsel's performance was unreasonable as viewed in the totality of the circumstances; and (2) his defense was prejudiced by counsel's action in that there is a reasonable probability that, but for counsel's unprofessional acts, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694-95 (1984); Schaeffer v. Black, 774 F.2d 865, 867 (8th Cir. 1985). Reasonably effective assistance of counsel may be defined as the skill and diligence that a reasonably competent attorney would exercise under similar circumstances. See, e.g., Strickland v. Washington, 466 U.S. at 687-90. Judicial scrutiny of counsel's performance must be highly deferential, id. at 689, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

On appeal from the denial of his Rule 29.15 motion, the Missouri Court of Appeals disposed of petitioner's claims as follows:

> In his single claim of error, Baker argues that trial counsel was ineffective for failing to timely endorse Lesmeister as a witness and that Baker suffered prejudice from counsel's error in that, without Lesmeister's testimony at trial, the State was allowed to argue that Baker's theory of defense was unsupported by the evidence. The motion court rejected this claim, finding that the untimely disclosure

---

shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

was attributable to Baker, not trial counsel, and that Baker suffered no prejudice from the absence of Lesmeister's testimony at trial. The motion court's decision was not clearly erroneous.

"In order to prevail on an ineffective assistance of counsel claim, [a movant] must show by a preponderance of the evidence that: (1) trial counsel's performance was deficient because []he failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances; and (2) the deficient performance prejudiced [the movant]." *Dawson v. State*, 315 S.W.3d 726, 731 (Mo. App. W.D. 2010). "If either the performance prong or the prejudice prong is not met, then we need not consider the other, and [a movant's] claim of ineffective assistance of counsel must fail." *Id.*

Here, Baker's claim fails on both fronts; he failed to demonstrate that counsel's performance was deficient, and he failed to demonstrate any resulting prejudice.

"To prevail on a claim of ineffective assistance of counsel based on trial counsel's failure to timely endorse a witness, movant must demonstrate what the substance of the witness'[s] purported testimony would have been and how it would have aided his defense." *State v. Henke*, 901 S.W.2d 921, 924 (Mo. App. W.D. 1995). "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland v. Washington*, 466 U.S. 668, 691 (1984). "[I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's . . . litigation decisions." *Id*. "Trial counsel cannot be deemed ineffective for [the] failure to endorse [a] witness in a timely fashion when [counsel] was unaware of the existence of [the] prospective witness." *State v. Lopez*, 836 S.W.2d 28, 36 (Mo. App. E.D. 1992). "Nor can [counsel] be faulted for the trial court's exercise of its discretion denying the late endorsement." *Id.*

Baker testified that he advised counsel about Lesmeister as a potential witness "a couple of weeks before trial, I guess." Before trial, when arguing against the State's motion to exclude Lesmeister's testimony, trial counsel told the court that Lesmeister had been disclosed "as soon as we knew she was going to be available as a witness," and "as soon as possible[.]" At the evidentiary hearing, trial counsel again indicated that Lesmeister was disclosed as soon as he discovered that she had potentially beneficial testimony to offer. Based on this evidence, we cannot

conclude that the motion court's finding that the untimely endorsement was attributable to Baker, rather than trial counsel, was clearly erroneous [f.n. 5]

> [f.n. 5] It is worth noting that Baker does not claim and did not present evidence that counsel was ineffective for failing to investigate or discover Lesmeister as a potential witness.

Furthermore, we reject Baker's claim of prejudice insofar as we believe that the State could have made the same argument regarding a lack of supporting evidence *even if* Lesmeister had testified at Baker's trial. Lesmeister's testimony would have indicated that Baker suffered from seizures and that he took medication for that condition. But the State's argument did not suggest a dearth of evidence of seizures or medication. Rather, the State argued that there was no evidence of "a mental problem," providing an alternate explanation for Baker's behavior. The State pointed out that there *were* statements in evidence about Baker's seizures and medications, but argues, "[t]hat's all there is. [Defense counsel's] entire argument was about some kind of mental problem that there's no evidence of." Thus, even if Lesmeister had offered the testimony she provided at the evidentiary hearing, the argument advanced by the State would have been the same [f.n. 6].

> [f.n. 6] Perhaps Baker recognizes this fact, as he did not raise a claim at trial that the State was making an improper comment on previously excluded evidence. *See, e.g., Kerns v. State*, 198 S.W.3d 204, 204 (Mo. App. E.D. 2006) ("While it is improper for a prosecutor to comment on matters that the court has excluded, where the comment does not refer to the excluded evidence but instead to some 'evidentiary void' that is not attributable to the trial court's ruling, the prosecutor may properly comment on it.").

But even if the State's argument could be read as a comment on the lack of evidence supporting Baker's asserted seizures and medication, we still fail to see how, in the absence of this argument, there is a reasonable probability of a different result. On direct appeal, we determined that "there was . . . overwhelming evidence that Baker was intoxicated at the time he took the HGN test." *State v. Baker*, 304 S.W.3d 250 (Mo. App. W.D. 2009) (mem.). Nothing about Lesmeister's proposed testimony would have diminished this overwhelming evidence. Consequently, Baker has failed to demonstrate any prejudice from counsel's failure to timely endorse Lesmeister as a witness.

> Point denied.
>
> *Conclusion*
>
> The motion court's findings of fact and conclusions of law are not
> clearly erroneous. Its decision is affirmed.

(Doc. No. 9, Ex. 12, pp. 9-12).

The resolution of ground 1a by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000).[3] Applying the Strickland standard of review to the facts as set forth in the record, the Court finds that counsel was not ineffective.

Ground 1a is denied.

## **GROUND 1b – PROCEDURAL DEFAULT**

Petitioner's remaining ground asserts that trial counsel was ineffective for failing to file a motion to suppress the statements made by the petitioner before he was advised of his *Miranda* rights. This ground is procedurally defaulted. In Coleman v. Thompson, 501 U.S. 722 (1991), the

---

[3] According to the concurrence of Justice OConnor, joined by four other members of the Court, under the contrary to clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Courts decisions but unreasonably applies that principle to the facts of the prisoners case. Williams, 529 U.S. at 413, 120 S.Ct. at 1523.

Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

A review of the record shows that petitioner did not present ground 1b in his original or amended Rule 29.15 motion. Therefore, this claim is procedurally defaulted and may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

Petitioner does not present any valid explanation for why this ground was not pursued in his Rule 29.15 motion and, therefore, has failed to demonstrate cause for his procedural default. As a result, we do not consider prejudice. The Court, however, can still reach the merit of his claim if petitioner can show that he is "probably actually innocent" of the crime for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegation of constitutional error "with new reliable evidence . . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995).

Petitioner fails to make this showing.

Petitioner has failed to show cause for his default of ground 1b. He does not show that a manifest injustice will occur if this ground is not reviewed on the merits, and he has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of ground 1b is barred.

Ground 1b is denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

## ORDER

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

  /s/ Ortrie D. Smith
ORTIE D. SMITH
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:　October 11, 2013.